# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LAWRENCE O. ANYASO,<br>Plaintiff,<br><br>v.<br><br>UNITED STATES CAPITOL POLICE,<br>Defendant. | ) | Civil Action No. 12-1327 (ESH) |

## DECLARATION OF KIMBERLIE J. BOLINGER

I, Kimberlie J. Bolinger, have personal knowledge of the following facts and will testify to them, if called to do so:

1. Since September 16, 2011, I have been the Commander of the Office of Professional Responsibility ("OPR") with the United States Capitol Police.

2. In that capacity, I review and approve all cases investigated in OPR.

3. OPR looks at the Rules of Conduct to determine violations of policy. (Attachment 1.)

4. Department policy governs vehicle pursuits. Under TRF 1.4.2, an officer may proceed Code One only when emergency equipment is activated. (Attachment 2.)

5. Code One does not relieve the operator of the responsibility to exercise due regard for the safety of all persons, potential traffic hazards, or to adhere to the operational restrictions provided in Directive 1.4.

6. Authorization to operate Code One does not alone allow an officer to pursue a vehicle.

7. Employees are not authorized to engage in vehicle pursuits to apprehend

perpetrators for non-violent felonies, misdemeanors, crimes against property, and traffic violations.

8. Officer Anyaso did not have authorization to pursue a vehicle operating Code One on May 28, 2011, because he was canvassing for a vehicle, and not pursuing it. (Attachments 3, 4.)

9. While Officer Anyaso was canvassing for the vehicle, he did not ensure the intersection at 4th Street and E Street, SE was free of potential traffic hazards. (Attachment 4.)

10. A Crash investigation was conducted by a trained crash investigator, Officer Ryan D. Ford.

11. The crash investigation was referred to the OPR to determine whether Officer Anyaso violated the Department's Rules of Conduct. (Attachment 5.)

12. OPR initially relied on the crash investigation to conclude that Plaintiff violated Operational Directive PRF 1.3, Rules of Conduct, Category A: Duty to Obey, Rule A3, Compliance with Directives, specifically TRF 1.4 Vehicular Pursuits, Sections 1.4.3 and 1.4.6 and General Order 6010, Mandatory Use of Vehicle Restraint Devices. (Attachment 5.)

13. That investigation was sent to the Department's discipline review officer was recommended to the Bureau Commander, Deputy Chief Thomas P. Reynolds, the appropriate penalty for the charges was a CP-534 with a loss of 16 hours for the Vehicular Pursuits charge and a CP-534 with warning for the Mandatory Use of Vehicle Restraint Devices.

14. Before Deputy Chief Reynolds decided on the appropriate penalty, I reviewed the investigation and found that the investigation was not sufficient. (Attachment 3.)

15. I noted that Officer Anyaso was not pursuing a vehicle and, as such, Directive 1.4 was not the appropriate violation because Officer Anyaso was canvassing for a vehicle Code

One, and not in pursuit of a vehicle. I also found that the victims in the other vehicle had not been interviewed.

16. I assigned the investigation for a more complete analysis to Sergeant Mark Shutters.

17. Sergeant Shutters concluded that the investigation revealed a preponderance of credible evidence that Plaintiff failed to operate the Department vehicle in a careful and prudent manner.

18. Sergeant Shutters found that Officer Anyaso violated Department policy when he searched (canvassed) with his vehicle's emergency equipment active for a vehicle based on a lookout.

19. Sergeant Shutters noted that Plaintiff failed to wear his seat belt, exceeded the prima facie speed limit, and passed the red traffic signal on E Street and 4th Street, S.E.

20. Sergeant Shutters found that Officer Anyaso failed to ensure the intersection was free of potential traffic hazards and failed to slow or stop at the intersection.

21. Sergeant Shutters found that as a result of the accident, which was deemed preventable by crash investigator Officer Ford, the loss incurred to the USCP vehicle amounted to $15,279.70, and a total loss to the other vehicle.

22. Sergeant Shutters noted that Officer Anyaso was unable to recall the majority of details associated with the incident including whether his lights and siren were on throughout the incident, his vehicle's speed, the posted speed limit, whether he reduced his speed, the color of the traffic signal, whether he slowed or stopped at the intersection to determine whether it was safe to proceed, whether he was wearing his seat belt, or whether he saw the other vehicle.

23. Based on the investigation, Sergeant Shutters sustained the charges of violating

the Department's Rules of Conduct, specifically, Operational Directive PRF 1.3 Rules of Conduct, Category B: Performance of Duty, Rule B12: Operating Vehicles.

24. Rule B12: Operating Vehicles requires that employees operate official vehicles in a careful and prudent manner, and will obey all laws, rules, regulations, directives and orders of the Department pertaining to such operation of a vehicle.

25. Sergeant Shutters concluded that Category B of the Rules of Conduct, Rule B12: Operating Vehicles and encompassed violations of both policy and law.

26. On November 4, 2011, the OPR submitted these findings to the DRO for a penalty recommendation on the more appropriate charge.

I declare under perjury the foregoing is true and correct.

Executed on this 11th day of December 2013.

Kimberlie J. Bolinger

Kimberlie J. Bolinger

# ATTACHMENT 1

# UNITED STATES CAPITOL POLICE OPERATIONAL DIRECTIVE

| **Title:** Rules of Conduct | |
|---|---|
| **Directive No.:** PRF 1.3 | **Effective Date:** 23 August 2000 |
| **Initiating Unit:** Office of the Chief | **Review Date:** 1st of August |
| **Distribution:** All Employees | **CALEA:** 26.1.1 |

**CONTENTS**


1.3.1 Policy
1.3.2 Definitions
1.3.3 Department Rules
1.3.4 Exemptions
1.3.5 Cancellations


## 1.3.1 Policy

The policy of the Department is to ensure that all employees, both sworn and civilian, maintain an exemplary standard of personal integrity and the highest professional standards of conduct in both their private lives and in their official capacities. This policy is embodied in the Department's Values. The Department will encourage and recognize exemplary behavior, promote adherence to professional standards of integrity and ethics, and create an environment that emphasizes productivity and develops employee commitment to professionalism.

The Rules contained herein are designed to serve as professional standards governing employee conduct. Any employee who is found guilty of violating one or more of these Rules will be subject to such disciplinary action as deemed appropriate by the Chief of Police. The Department will absolve employees who are proven innocent, administer appropriate administrative punishment, or defer to the appropriate authority for criminal prosecution, if appropriate, when improper acts are confirmed.

## 1.3.2 Definitions

Supervisor – An employee in the rank, or civilian equivalent, of Sergeant or above, or a designated supervisor.

Department Rules – A Department rule is designed to cover situations in which no deviation or flexibility is permitted.

## 1.3.3 Department Rules

## CATEGORY A: DUTY TO OBEY

***Rule A1: Knowledge of Laws and Regulations***
Employees are required to know and understand all applicable laws, rules, regulations, directives, orders, written procedures, etc. relevant to their official duties.

***Rule A2: Conformance to Laws***
Employees will obey all laws of the United States, the District of Columbia, and of any state, local, or military jurisdiction in which they may be present. Employees arrested or indicted for a violation of any law, other than minor non-custodial traffic offenses, or summoned to appear in response to a criminal complaint, will immediately notify one of their supervisors, who in turn will notify the Chief of Police through the chain of command.

***Rule A3: Compliance with Directives***
Employees are required to obey all Departmental rules, regulations, directives, orders, policies and procedures. Lawful orders from a supervisor, including orders relayed from a supervisor by an employee of equal or lesser rank, will be promptly obeyed.

***Rule A4: Conflicting Orders***
Should a supervisor issue an order which conflicts with a previously issued order, rule, regulation or directive, the employee should respectfully call attention to the conflicting order and, if not rescinded by the supervisor, the order will stand and will be promptly carried out. The responsibility for the order will rest with the issuing supervisor and the employee will not be answerable for disobedience of the previously issued order.

***Rule A5: Improper Orders***
Supervisors will not issue any order which they know, or should know, would require a subordinate to commit any illegal or unethical acts. Employees will not obey any order which they know, or believe, would require them to commit illegal or unethical acts. If in doubt as to an order being illegal or unethical, employees will respectfully request the issuing supervisor to clarify the order or to confer with higher authority.

***Rule A6: Insubordination***
Employees will not refuse to obey, by words or actions, any lawful order of a supervisor, and will not utter any disrespectful, rebellious, insolent, or abusive language to or toward a supervisor.

***Rule A7: Truthfulness***
Employees will make truthful statements at all times, written or verbal, pertaining to official duties or matters affecting the Department. Employees are required to cooperate fully and truthfully during Department investigations.

## CATEGORY B: PERFORMANCE OF DUTY

***Rule B1: Unsatisfactory Performance***
Employees will maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions. Employees will perform their duties in a manner which will maintain the highest standards of efficiency and integrity in carrying out the functions and objectives of the Department. Unsatisfactory performance may be demonstrated by, but will not be limited to:

a. A lack of knowledge of the application of laws required to be enforced;
b. An unwillingness or inability to perform assigned tasks;
c. The failure to conform to work standards established for the respective ranks, grades, or positions;
d. The failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention;

e. Repeated poor evaluations or a written record of repeated infractions of the rules, regulations, directives or orders of the Department; or

f. Repeated sustained complaints of misconduct.

***Rule B2: Personal Appearance***

Employees will maintain a neat, well-groomed appearance and comply with all Department policies pertaining to uniforms, civilian attire, appearance, and grooming.

***Rule B3: Absence from Duty***

Employees who fail to appear for duty at the date, time, and place specified without consent of a supervisor are "Absent With Out Leave".

***Rule B4: Reporting for Duty***

Employees will report for duty on time, and at the time and place required, or they will be tardy. They will be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties.

***Rule B5: Carrying of Credentials and Identification***

A. Sworn employees will carry their Department credentials on their person at all times while on duty, and while off duty when carrying the issued handgun, except when impractical or dangerous to their safety or pursuant to an authorized investigation.

B. Civilian employees will carry their identification while on duty, display the ID upon request, and furnish their name when requested while on duty.

C. Sworn employees will promptly furnish their name and Personal Identification Number (PIN) to any person requesting that information when they are on duty or while conducting themselves in or representing themselves as acting in an official capacity, except when the withholding of such information is necessary for the performance of duty, is authorized by a supervisor, or is necessary to protect the employee's safety or the integrity of an authorized investigation.

D. Employees will not lend their badges, credentials, or identification to any other person.

***Rule B6: Malingering***

Employees will not feign illness or injury, falsely report themselves or others ill or injured, or otherwise deceive or attempt to deceive any supervisor of the Department, or any other governmental agency or individual authorized to conduct such an inquiry, as to the condition of their health or the health of others.

***Rule B7: Duty Post***

Employees will assume their assigned duty post without unnecessary delay. Employees will not leave their assigned duty post during a tour of duty, or at the conclusion of their tour of duty, except when properly relieved or authorized by a supervisor, and will then proceed immediately to their next assignment or to the area and/or supervisor designated for check out or reassignment.

***Rule B8: Meals and Other Relief Periods***

Employees will be permitted to suspend patrol or other assigned activity, subject to immediate call, for the purpose of relief or having meals during their tour of duty, but only for such period of time, and at such time and place as may be established by a supervisor.

***Rule B9: Courtesy***

Employees will be polite, courteous and respectful to all persons at all times. Employees will be tactful, friendly, helpful and understanding in the performance of their assigned duties, will control their tempers, exercise the utmost patience and discretion, and will not engage in argumentative discussion even in the face of extreme provocation. In the performance of their duties, employees will not use coarse, violent, profane, or insolent language or gestures, will not intimidate, and will not express any prejudice concerning race, religion, gender, politics, national origin, lifestyle, age, disabilities, or similar personal characteristics.

***Rule B10: Neglect of Duty***

Employees will devote their full time and attention to the performance of their duties at all times while on duty.

***Rule B11: Use of Property and Services, and Inspection of Equipment and Facilities***

Employees will use the equipment, supplies, services and facilities of or under the care of the Department only for their intended purpose, in accordance with established procedures, and will not abuse or purposely damage such equipment or facilities. All facilities and equipment of or under the care of the Department and/or issued to employees such as desks, vehicles, computers, uniforms, etc., and their contents, will be maintained in proper order, and are subject to inspection at any time with or without prior notice, as directed by the Chief or his designee.

***Rule B12: Operating Vehicles***

Employees will operate official vehicles in a careful and prudent manner, and will obey all laws, rules, regulations, directives and orders of the Department pertaining to such operation. The suspension, expiration or revocation of any employee's operator's permit will be reported immediately to such employee's supervisor.

***Rule B13: Use of Force***

Sworn employees will use only such force in any situation that is reasonably necessary under the circumstances, in accordance with applicable laws and the established procedures and training of the Department.

***Rule B14: Use of Weapons***

Sworn employees will not discharge any firearm nor use or handle any weapon in a careless or imprudent manner. Sworn employees will carry, store, secure and/or use all firearms and weapons in accordance with applicable laws and the established procedures of the Department.

***Rule B15: Arrest, Search, and Seizure***

Every arrest, search, and seizure will be in accordance with applicable laws and the established procedures of the Department.

***Rule B16: Treatment of Persons in Custody***

Sworn employees will not mistreat persons who are in their custody, and will handle persons in custody in accordance with applicable laws and the established procedures of the Department.

***Rule B17: Property and Evidence***

Property or evidence which has been discovered, gathered, or received in connection with the responsibilities of the Department will be processed in accordance with established Department procedures. Employees will not convert to their own use or that of another party, manufacture, conceal, falsify, destroy, remove, tamper with, or withhold any property or evidence in connection with an investigation or other police action, except in accordance with established procedures.

***Rule B18: Court Appearances***
Employees who are subpoenaed, summoned, or otherwise requested to appear and/or testify in a court or hearing of any jurisdiction, in their capacity as a law enforcement officer or in matters pertaining to the Department, including any administrative hearing, will immediately notify their supervisor and then comply with the directive to appear.

***Rule B19: Response to Calls***
Employees who are assigned radio communications, cellphones, pagers, or other communications equipment will keep said equipment turned on and on the appropriate channel at all times while on duty or on call, unless authorized by the employee's supervisor to do otherwise. Employees will promptly respond to all communications directed to them.

## CATEGORY C: DETRIMENTAL CONDUCT

***Rule C1: Conduct Unbecoming***
Employees will conduct themselves at all times, both on and off duty, in such a manner as to reflect favorably on the Department. Conduct Unbecoming will include that which brings the Department into disrepute or reflects discredit upon the employee as a member of the Department; that which impairs the operation or efficiency of the Department or the employee; and conduct which is prejudicial to the reputation and good order of the Department.

***Rule C2: Discrimination and/or Harassment***
Employees will not discriminate against and/or harass any other person on the basis of race, color, national origin, religion, gender, age, sexual orientation, disability, or any other basis prohibited by law or Departmental directive.

***Rule C3: Possession and/or Use of Drugs***
Employees will not possess or use any narcotic, controlled dangerous substance or hallucinogens, except when prescribed in their treatment by a licensed medical practitioner.

***Rule C4: Use of Alcohol***

A. Employees will not consume alcohol while on duty or while wearing any part of the uniform, except as permitted by specific orders of a supervisor.

B. Employees will not report for duty, or be on duty, while impaired or under the influence of an intoxicant to any degree whatsoever, or with an odor of an intoxicant on their breath or about their person.

C. Sworn employees will not exercise any police authority, take any official police action or represent themselves as a police officer while impaired by, or under the influence of, any intoxicant.

D. Employees, while off duty, will refrain from consuming intoxicating beverages to the extent that it results in behavior which discredits the Department, or renders the employee unfit to report for the next regular tour of duty.

***Rule C5: Use of Tobacco***
Employees will use tobacco only in accordance with the policies of the Department.

***Rule C6: Gifts, Gratuities, Bribes, or Rewards***
Employees will not solicit or accept from any person, business, or organization, any gift (including money, tangible or intangible personal property, food, beverage, loan, promise, service, or entertainment) for the benefit of any employee or any other person, which may give the appearance that such solicitation or acceptance is in return for being influenced in the performance of any official act, or being induced to do or omit to do any act in violation of their duty.

***Rule C7: Improper Associations***
Employees will avoid regular or continuous associations or dealings with persons whom they know, or should know, are persons under criminal investigation or indictment, or who have a reputation in the community or the Department for present involvement in felonious or criminal behavior, except as necessary in the performance of official duties, or where unavoidable because of immediate familial relationships.

***Rule C8: Gambling***
Employees will not engage or participate in any form of illegal gambling at any time, except in the performance of duty and while acting under proper authorization from a supervisor.

***Rule C9: Communications with Criminals***
Employees will not communicate verbally or in writing, directly or indirectly, in any manner or form, any information that may enable persons engaged in, suspected of, or guilty of criminal acts to escape arrest or punishment, or which may permit them to dispose of or secrete any money, goods, or other evidence unlawfully obtained or possessed.

***Rule C10: Improper Remarks***
Employees will not make malicious, harassing, untruthful, or frivolous remarks or rumors against, or about, other members of the Department.

***Rule C11: Retaliation***
Employees will not harass, ridicule or retaliate in any form against a complainant, employee, or any witness for complaining or otherwise offering evidence in a Department, criminal, or administrative investigation.

## CATEGORY D: ADMINISTRATIVE RESPONSIBILITIES

***Rule D1: Off-Duty Employment***
Employees may engage in off-duty employment only in accordance with established policies and procedures.

***Rule D2: Telephone***
Employees will have and maintain in operation a telephone in their residence, will inform the Department of their telephone number, and will immediately report any change of telephone number in accordance with established procedures.

***Rule D3: Changes in Personal Status***
Employees will report any change in personal status, including residence address or next of kin notification, in accordance with established procedures.

## CATEGORY E: MISCELLANEOUS

***Rule E1: Abuse of Process***
Employees will not intentionally manufacture, tamper with, falsify, destroy, or withhold evidence or information, nor make any false accusations, statements or complaints regarding a criminal charge, traffic offense, or administrative violation.

***Rule E2: Improper Intervention***
Employees will not interfere with official business being handled by other employees or any other government agency unless ordered to intervene by a supervisor, or the intervening employee reasonably believes that a manifest injustice would result from failure to take immediate action. Employees will not undertake any investigation or other official action not part of their regular duties without obtaining permission from competent authority unless the exigencies of the situation require immediate action.

***Rule E3: Work Stoppage***
Employees will not engage in any work stoppage. This includes the concerted failure to report for duty, willful absence from one's position, unauthorized holidays, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment for the purpose of protesting, inducing, influencing, or coercing change in conditions, compensation, rights, privileges, or obligations of employment.

***Rule E4: Dissemination of Information***
Employees will treat the official business of the Department as restricted, and are prohibited from disseminating information concerning Department investigations or operations to any unauthorized person, in accordance with established Department procedures. Employees are prohibited from providing information obtained from the Criminal Justice Information System (CJIS), Motor Vehicle Administration (MVA), Washington Area Law Enforcement System (WALES), National Crime Information Center (NCIC), or any other source to any unauthorized person, except in the performance of their duties and in accordance with proper procedure and law.

***Rule E5: Public Statements***
Employees will not publicly criticize or ridicule the Department, its policies, or other employees by speech, writing, or other expression, where such speech, writing, or other expression is unlawful, violates Department regulations, or is made with reckless disregard for truth.

***Rule E6: Public Appearances***
Employees will not purport to represent the Department by addressing public gatherings, appearing on radio or television, lecturing on "police" or other related subjects, preparing any articles for print or electronic publication, acting as a correspondent to a newspaper, periodical or electronic media, releasing or divulging investigative information or any other material regarding matters of the Department without prior approval from the Chief of Police.

***Rule E7: Testimonials***
Employees will not permit their names or photographs indicating their association with the United States Capitol Police to be used in any commercial, political, or other testimonial which alludes to their position or employment without the approval of the Chief of Police.

***Rule E8: Service of Civil Processes***
Sworn employees will not serve civil processes, nor take part in any such service.

***Rule E9: Reports***
Employees will submit all necessary reports in accordance with established Departmental procedures. Reports will be truthful, accurate, complete and timely.

***Rule E10: Compromises***
Employees are prohibited from becoming involved, in any way, in an attempt to make a compromise or arrangement between suspected criminal violators and their alleged victims.

## CATEGORY F: SUPERVISORS

***Rule F1: Subordinate Compliance***
Supervisors will be responsible for subordinates' adherence to Department rules, regulations, policies, procedures, orders and directives, and will take reasonable action to ensure compliance.

***Rule F2: Subordinate Discipline***
Supervisors will be responsible and accountable for the maintenance of discipline and will provide leadership, supervision and example to ensure the efficiency and integrity of Department operations.

***Rule F3: Subordinate Performance***
Supervisors will be responsible for the job performance of all subordinates placed under them. Authority and functions may be delegated to subordinates, but responsibility remains with the supervisor who made the assignment.

***Rule F4: Subordinate Failures***
Supervisors will be responsible and held accountable for all job-related failures on the part of their subordinates when the supervisor was aware, or should reasonably have been aware, of the failure or potential for failure, and did not take the appropriate action to correct or prevent the deficiency.

### 1.3.4 Exemptions

In certain instances, the Chief of Police may exempt individuals or units from complying with specific rules contained in this directive. Such exemptions will be made on a case-by-case basis in recognition of individual or unit requirements for the performance of their job.

**1.3.5 Cancellations:** This Directive cancels General Order 2210, issued 09 Mar 94
General Order 2211, issued 07 Oct 98
USCP Police Manual, Chapter II, Sections 1, 2, 6, 8-9, 11, 17, 22-28, 31, 33-35, 38, 43, 52
USCP Police Manual, Chapter III, Sections 1 and 2
USCP Police Manual, Chapter VI
Civilian Employee Handbook, Insubordination, Dress Code and Misconduct Sections

**James J. Varey**
**Chief of Police**

# ATTACHMENT 2

# UNITED STATES CAPITOL POLICE
## OPERATIONAL DIRECTIVE

| Title: Vehicular Pursuits | |
|---|---|
| Directive No.: TRF 1.4 | Effective Date: 15 April 2003 |
| Initiating Unit: Patrol/Mobile Response Division | Review Date: 1st of July |
| Distribution: All Sworn Employees | CALEA: 41.2.2, 41.2.3, 41.3.1, 41.2.1, & 61.3.4 |

CONTENTS


1.4.1 Policy
1.4.2 Definitions
1.4.3 Restrictions
1.4.4 Initiation or Continuation of Pursuits
1.4.5 Pursuit Procedures
1.4.6 Operation of Emergency Vehicles During Pursuit
1.4.7 Emergency Vehicle Tactics
1.4.8 Roadblocks
1.4.9 Jurisdiction
1.4.10 Pursuit Supervisor
1.4.11 Dispatcher
1.4.12 Additional Information
1.4.13 Cancellation


### 1.4.1 Policy

When operating an authorized USCP pursuit vehicle with emergency devices activated, sworn employees may engage in pursuit of a vehicle only to affect the arrest or prevent the escape of a person who has committed a violent felony, has attempted to commit a violent felony in the employee's presence, or a violent felony has been committed and the employee has probable cause to believe the person he is attempting to apprehend has committed the felony. The felony must involve an actual or threatened attack which the employee has probable cause to believe could result in death or serious bodily injury.

### 1.4.2 Definitions

Authorized USCP Emergency Vehicle – A Department vehicle approved by the Chief, and equipped with a siren, capable of giving an audible signal under normal conditions from a distance of not less than 500 feet, and with at least 1 lighted lamp displaying a red light capable of flashing alternately and visible under normal conditions from a distance of 500 feet to the front of such vehicle.

For administrative purposes, authorized USCP emergency vehicles are those vehicles which:

a. In the case of **marked vehicles**, display USCP reflective markings, are equipped with roof and grill or front mounted emergency lights, and a siren.
b. In the case of **unmarked vehicles**, are equipped with a portable revolving light or strobe lights, and grill or front mounted emergency lights, and a siren.
c. In the case of a Department motorcycle, those equipped with an engine size of at least 800cc, bearing USCP markings, and which are equipped with flashing/strobe emergency lights and a siren.

Code 1 Emergency Response – The operation of a Department vehicle with emergency equipment activated. Code 1 operation does not relieve the operator of the responsibility to

exercise due regard for the safety of all persons, potential traffic hazards, or to adhere to the operational restrictions provided in this Directive.

The Traffic Regulations for Capitol Grounds states:

Section 6.(b) The driver of an authorized emergency vehicle may-

1. Park or stand, irrespective of the provisions of these regulations;
2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
3. Exceed the prima facie speed limits so long as he does not endanger life or property;
4. Disregard regulations governing direction of movement or turning in specified directions.

Section 6.(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

Refer to Department policies on vehicular response to emergencies for Code 1 procedures. Only authorized USCP emergency vehicles are authorized to respond Code 1, unless authorization for another type of vehicle is granted by the Watch Commander. Authorization to operate Code 1 does not alone, allow the employee to pursue a vehicle.

Code 2 – A response directly and without delay to a request for service, utilizing the operation of any Department vehicle, in full compliance with all the applicable traffic regulations, and without exercising any of the privileges reserved for the operation of an authorized emergency vehicle or a footman/building patrol responding directly and without delay to a request for service or emergency call.

Code 3 – A response at the convenience of the operator of any Department vehicle in full compliance with all the applicable traffic regulations, and without exercising any of the privileges reserved for the operation of an authorized emergency vehicle or a response at the convenience of a footman/building patrol so directed by communications.

Primary Unit – A unit dispatched directly to or already on the scene of an emergency or incident. Usually the first officer on the scene, the primary unit will take immediate appropriate action to control the situation, and safeguard life and property.

Secondary Unit – A unit dispatched to back up the primary unit at the scene. A secondary unit may also be assigned to perimeter patrol or other support functions, as necessary. A secondary unit is engaged in the pursuit is subject to the same conditional factors and parameters as the primary unit during the actual pursuit.

USCP Authorized Pursuit Vehicle – Only vehicles rated by the manufacturer for pursuit operation and which are designated as authorized USCP emergency vehicles are authorized to engage in vehicular pursuits. Vehicle Maintenance personnel will mark all Department vehicles in a conspicuous location as to the pursuit status of a vehicle.

Rolling Roadblock – A technique designed to stop a violator's vehicle by surrounding it with pursuit vehicles and intentionally slowing all vehicles to a stop. Rolling roadblocks are PROHIBITED, unless specifically authorized by a supervisor and conducted by personnel trained in these techniques.

USCP000583

Stationary Roadblock – The use of USCP vehicles strategically placed or situated to stop or slow down a pursued vehicle in the safest possible manner. At least one of the vehicles used will be a marked police vehicle. Only USCP vehicles will be used in conjunction with a roadblock. Stationary roadblocks are PROHIBITED, unless specifically authorized by a supervisor and conducted by personnel trained in these techniques.

Vehicular Pursuit – Pursuit of a vehicle by a sworn employee who is trained and certified in pursuit driving, using an authorized USCP pursuit vehicle to apprehend an individual whom the employee has probable cause to believe has committed a felony involving violence or threatened violence against another person.

Violent Felony – Any offense that is a felony and by its nature involves a substantial risk that physical force against the person of another may be or has been used in the course of committing the offense.

Authorized USCP Mountain Bike -- An authorized USCP Mountain Bike is a mountain bike furnished by the Department for use during routine patrol to sworn officers who have been certified to operate the mountain bikes. Authorized USCP Mountain Bikes are marked with police identification and equipped with flashing red/blue lights and a device which sounds an audible alert. Mountain bikes can utilize the flashing red/blue lights and the device which emits an audible alert to respond to emergency situations for the purpose of moving pedestrians away from their path. This equipment may also be utilized for safety purposes when engaged in authorized traffic enforcement actions. Authorized USCP Mountain Bikes will not pursue or stop moving motorized vehicles. Certified operators of the mountain bikes can effect stops of pedestrians, bicyclists, and motor vehicles which are stopped in traffic as long as it is tactically and physically safe to do so.

### 1.4.3 Restrictions

Employees will not engage in vehicular pursuit to apprehend perpetrators of the following offenses:

a. Non-violent felonies
b. Misdemeanors
c. Crimes against property
d. Traffic violations

### 1.4.4 Initiation or Continuation of Pursuits

Keeping in mind that the object of any police pursuit is to apprehend a law violator without causing unnecessary peril to the employees involved, or to the persons or property of by-standers, the following factors will be considered prior to initiating or continuing a pursuit:

a. The danger to the public by allowing the suspect to escape balanced against the danger to the public by continuing the pursuit
b. Road conditions
c. Visibility
d. Weather conditions
e. Traffic conditions
f. Pedestrian traffic
g. The employee's knowledge of the roadway
h. The limitations of the vehicle
i. The availability of additional units

### 1.4.5 Pursuit Procedures

Code 1 - Authorized

1. Notify the dispatcher immediately upon engaging in a pursuit and provide a description and tag number of the vehicle, suspects, and reason for pursuit.
2. Provide the dispatcher with continued updates regarding the suspect's location, direction of travel, estimated speed, and additional major violations of law observed.
3. Maintain a sufficient distance between your vehicle and the vehicle being pursued so that you can reasonably avoid striking any object or person.
4. Attempt to keep the fleeing vehicle in sight until the suspect stops.
5. Terminate the pursuit if you experience a sustained loss of radio communications with the dispatcher.

Code 1 - Not Authorized

When a suspect uses a vehicle to leave the scene of a non-violent offense or the officer does not have probable cause to believe the offense involved an actual or threatened attack which could result in death or serious bodily injury, the employee will:

- a. Attempt to obtain the tag number
- b. Attempt to obtain a description of the vehicle
- c. Note all observable information relative to the vehicle, operator, and passengers
- d. Transmit a flash lookout

### 1.4.6 Operation of Emergency Vehicles During Pursuit

1. Notify the dispatcher of the pursuit and Code 1 response.
2. Utilize Code 1 by activating the siren and all mounted emergency/portable lights. While operating Code 1, it is imperative to have emergency lights AND siren working simultaneously.
3. Open both front windows if a 10-4 unit, or open the driver's side window if a 10-99 unit.
4. Activate the headlights regardless of the time of day.
5. When operating emergency vehicles with the emergency warning devices activated:
   - a. Proceed with caution at all times. Only operate the vehicle at a speed which is appropriate for the road and traffic conditions at the time.
   - b. When approaching any intersection controlled by electronic signal devices, proceed when safe to do so if proceeding with a green signal. If passing a red signal, slow before entering the intersection, stopping if necessary, and proceed with caution when safe.
   - c. When approaching any intersection controlled by a stop sign or approaching an uncontrolled intersection, slow before entering the intersection, stopping if necessary, and proceed with caution when safe.
   - d. Travel in the left lane and pass on the left whenever possible since other drivers are trained to pull to the right to yield to an emergency vehicle.
   - e. When disregarding regulations governing direction of movement or turning in specified directions, proceed with extreme caution.

### 1.4.7 Emergency Vehicle Tactics

1. In the course of a pursuit, deliberate contact between vehicles, or forcing the pursued vehicle into parked cars, ditches, or any other obstacle; boxing in, heading off, ramming or driving alongside the pursued vehicle while it is in motion, or any other tactic designed to directly impede/halt the action of a vehicle being pursued is PROHIBITED, except in instances where the use of deadly force would be authorized.

2. Employees will not intentionally change vehicle position during a pursuit unless it is tactically necessary and can be done so safely.
3. Unmarked vehicles may engage in pursuit; however, when a marked vehicle becomes available to take over the pursuit, the unmarked vehicle will discontinue the pursuit and serve in a support role and continue along the route of the pursuit, obeying all traffic regulations until the termination point or until the pursuit is ordered terminated.

**1.4.8 Roadblocks**

1. The use of rolling roadblocks is PROHIBITED, unless specifically authorized by a supervisor and conducted by personnel trained in this technique.
2. Employees will only participate in roadblocks within the Department's statutorily defined jurisdiction when specifically authorized by a supervisor.
3. Stationary roadblocks can be used when the officer has probable cause to believe that the crime committed was a violent felony (DWI alone is not a valid reason to use a roadblock). Any collision between motor vehicles has the potential to cause serious injury or extensive property damage. Any time officers use a police vehicle to stop a moving vehicle, the hazards to the public, other police officers, and the suspect must be taken into consideration.
4. Employees will conform to established procedures when conducting these techniques.

**1.4.9 Jurisdiction**

Crossing Major Jurisdictional Boundaries

1. Conduct pursuit into Maryland only:
   a. On probable cause that the offender has committed a [violent] felony in the District of Columbia, and
   b. The continuation of the pursuit is authorized by the Watch Commander.
   c. The arrested person is to be taken before a judge where the arrest was made (i.e., a judge of the circuit court of a county or a judge of the Criminal Court of Baltimore City) without unnecessary delay for a hearing to determine the lawfulness of the arrest.
2. Conduct pursuit into Virginia only if:
   a. You have probable cause to believe the suspect has committed a [violent] felony, and
   b. The continuation of the pursuit is authorized by the Watch Commander.
   c. The arresting officer is required to take the prisoners without unnecessary delay before a judge or a general district court, or of the circuit court, of the county or city in which the arrest was made, to determine the lawfulness of the arrest.

Pursuits Conducted Within Other Jurisdictions

Whenever a pursuit enters another jurisdiction and a unit from the other jurisdiction assumes the role of lead vehicle for the pursuit, employees of this Department will immediately assume a secondary role.

Vehicular Pursuit into the District of Columbia from Other Jurisdictions

Duly authorized law enforcement officers may enter the District of Columbia in vehicular pursuit and continue within the District in pursuit of a person in order to arrest the offender on the grounds that he is believed to have committed a felony in the jurisdiction from which pursued. The arrested person must be taken before a judge of the Superior Court without unnecessary delay for a hearing to determine the lawfulness of the arrest. However, there is no authorization under the DC Code for an officer from another state to effect an arrest within the District of Columbia for a misdemeanor offense. Employees who encounter an officer from another

jurisdiction and discover that the officer has a person in custody who has committed a misdemeanor in the other jurisdiction will:

a. Inform the officer from the other jurisdiction that he has no authority to effect an arrest for a misdemeanor in the District of Columbia;
b. Advise the citizen that he need not return to the other jurisdiction against his will; and
c. Assist the officer from the other jurisdiction to ascertain any pertinent information which the officer may request as the result of the "Stop."

### 1.4.10 Pursuit Supervisor

1. Monitor the pursuit on the assigned channel and respond.
2. Continue to monitor the pursuit for overall safety and determine whether conditions justify continuation of the pursuit.
3. Order the pursuit terminated any time there is a significant absence of adequate information (e.g., police unit involved, offense, location, direction of travel, description of subject vehicle pursued, loss of radio contact, etc.).
4. Debrief the involved employees following the pursuit.
5. Provide the Chief of Police with a comprehensive report of all circumstances involved in the pursuit, and a written pursuit analysis.

<u>Pursuits Initiated by Other Agencies</u>

1. Upon notification, or whenever you become aware that a pursuit in progress may enter or has entered Department jurisdiction, ensure the dispatcher and all patrol units are aware of the event and the possible route of travel.
2. Monitor the pursuit, and if you determine a Department response is necessary, ensure that patrol units are informed of relevant circumstances and the specific actions they are to perform.
3. Ensure the Watch Commander is aware of all circumstances and request a decision through the dispatcher as to the extent the Department should join or not join the pursuit, and/or provide other assistance to the pursuing agency.
4. Employees who meet an officer from another jurisdiction who has pursued and stopped a person who has committed a felony in the other jurisdiction will advise that the person in custody may not be removed from the District of Columbia until the individual is processed through the court system. Agencies with arrest authority within the District of Columbia will be assisted as appropriate, and in all instances, final processing of the individual in custody, including the placing of additional charges, will be coordinated through the Watch Commander.

### 1.4.11 Dispatcher

1. Notify the on-duty supervisor in Communications, the Watch Commander, a supervisor from the division initiating the pursuit, and a Patrol/Mobile Response supervisor, whenever vehicular pursuit is engaged.
2. Designate one secondary pursuit vehicle. Advise all other vehicular units to remain uninvolved unless otherwise directed.
3. Designate an alternate radio channel for routine radio traffic, if appropriate.
4. Notify other jurisdictions if it appears that the pursuit is approaching their direction.
5. Upon notification from a supervisor or the Watch Commander, advise patrol units of pursuits entering Department jurisdiction, or likely to enter Department jurisdiction, as follows:
   a. Notify the units that the suspects being pursued are wanted for a misdemeanor or a felony offense, and specify the offense.

b. Name the initiating agency.
c. Transmit (as available) a description of the vehicle, tag number, description of occupants, general direction of travel, progress of the pursuit, and any other pertinent information.

6. In any instance where the pursuit terminates outside the Department's legally defined jurisdiction, provide coordination between pursuing officers and officials of the host jurisdiction.

### 1.4.12 Additional Information

1. Code 1 operation is prohibited any time you are transporting passengers who are not employees of the Department, and any time you are transporting employees who are in a restricted duty status. However, it is permissible to begin a pursuit after discharging passengers excluded from Code 1 operation, provided they are discharged in a safe and secure space. In the event you perform such an action, you must then inform the dispatcher at the first opportunity of the number of passengers and the location of the discharge area. Individuals participating in the Department's Ride Along Program may remain in the vehicle in those instances when the passenger has signed the Acknowledgment, Waiver and Release of Liability Form, CP-42.
2. Pursuits will normally be limited to a primary and secondary unit and the supervisor. In any instance where it is believed more support is necessary, the supervisor will request assistance through the Watch Commander. Only with the permission of this official may more vehicles join the pursuit, and in all instances where additional manpower is authorized, the supervisor will name the units.
3. In the event there are conflicting orders between commanders/supervisors and the Watch Commander regarding actions during a pursuit, the order of the Watch Commander will prevail.
4. Refer to the Department use of force policy for situations involving the use of deadly force.
5. The Patrol/Mobile Response Division Commander must annually review all pursuit analyses which occurred during the calendar year and report recommendations to the Chief of Police.
6. The Vehicle Maintenance Division (VMD) is charged with researching equipment capabilities as it relates to pursuit rating, maintaining equipment which is manufactured for use during Code 1 and Pursuit operation, and providing input to the Office of Financial Management prior to the Department purchasing vehicles and equipment. Additionally, VMD will conspicuously mark each vehicle to delineate which vehicles are and are not pursuit rated.
7. Sworn employees who operate police vehicles will be given initial and periodic training in the Department's pursuit policy and in safe driving tactics.

### 1.4.13 Cancellation

This directive replaces Operational Directive TRF 1.4 issued 23 July 2001.

Terrance W. Gainer
**Chief of Police**

# ATTACHMENT 3

**CONFIDENTIAL INFORMATION**

Phone: 202-224-9806

UNITED STATES CAPITOL POLICE
OFFICE OF THE CHIEF
119 D STREET, NE
WASHINGTON, DC 20510-7218

December 12, 2011

MEMORANDUM

**TO:** File

**FROM:** Captain Kimberlie J. Bolinger
Commander
Office of Professional Responsibility

**SUBJECT:** Memo To File: Lawrence O. Anyaso Case - # 11-118

On July 20, 2011, the Office of Professional Responsibility (OPR) logged in its first traffic crash investigation. The respondent in the case was Officer Lawrence O. Anyaso (Patrol Mobile Response Division (PMRD), Section 3). Anyaso's case was the first traffic crash investigation forwarded to the OPR from PMRD. Prior to July 20, 2011, all traffic crash investigations originated and concluded with PMRD investigators and officials determining the findings of the investigation as well as the appropriate penalty for any crash involving a Department vehicle. According to PMRD, Anyaso's crash was the first investigation they had undertaken that warranted a CP-535 *Request for Disciplinary Action* based on the Crash/Accident Discipline Matrix. PMRD's investigation concluded that Officer Anyaso violated Operational Directive PRF 1.3 *Rules of Conduct*, Category A: Duty to Obey, Rule A3, *Compliance with Directives*, specifically TRF 1.4 *Vehicular Pursuits* as well as General Order 6101, *Mandatory Use of Vehicle Restraint Devices*. The Office of Professional Responsibility (OPR) concurred with the findings then reported the disposition of the case to Captain George B. Hawco via a sufficiency memorandum. The case file was sent to the Disciplinary Review Officer (DRO), Ms. Robin Matthew for penalty recommendation.

Upon closer review of PMRD's Vehicle Crash Investigation, the OPR concluded that Anyaso was not pursuing a vehicle as was conveyed to the OPR investigator initially assigned to review the case (Huycke). Additionally, the OPR noticed that the victims in the vehicle accident had never been interviewed by the crash investigator. Interviews with the victims clarified facts that were initially in question (Anyaso's use of a siren). Additionally, review of witness statements revealed that Anyaso was canvassing for a vehicle Code One, not in pursuit of a vehicle. This information led the OPR to reassess the case and write a Report of Investigation on the findings. The OPR investigator (Shutters) concluded that a different violation of Operational Directive PRF 1.3 *Rules of Conduct* was deemed warranted. The new charge was classified under Category B of the *Rules of Conduct*, Rule B12: *Operating Vehicles* and encompassed violations of both policy and law. On November 4, 2011, the OPR submitted its findings to the DRO for a penalty recommendation that reflected the new, more appropriate charge.

Nationally Accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc.

# ATTACHMENT 4

# REDACTED IN ENTIRETY

# ATTACHMENT 5

# CONFIDENTIAL INFORMATION

PHONE: 202-224-98

UNITED STATES CAPITOL POLICE
OFFICE OF THE CHIEF
119 D STREET, NE
WASHINGTON, DC 20510-7218

August 12, 2011

**MEMORANDUM**

**TO:** Captain George B. Hawco
Commander
Office of Professional Responsibility KB fo GBH

**THRU:** Lieutenant Kimberlie J. Bolinger
Assistant Commander
Office of Professional Responsibility KAB

**FROM:** Sergeant Shawn K. Huycke
Investigator
Office of Professional Responsibility

**SUBJECT:** OPR Case # OPR 11-118 In the matter of:
**Officer Lawrence Anyaso**
Patrol Mobile Response Division, Section Three
DOA: 06/13/2003 PIN: 5440

I have reviewed the attached Patrol Mobile Response Division's Vehicle Crash Investigation completed by Lieutenant Richard McArthur:

I concur with the following conclusions made by Lieutenant McArthur:

1. That the collision is classified as: **PREVENTABLE.**

2. That the charges of Violation of Operational Directive, PRF 1.3 *Rules of Conduct,* Category A: Duty to Obey, Rule A3, *Compliance with Directives,* specifically TRF 1.4 *Vehicular Pursuits,* Sections 1.4.3 and 1.4.6 are classified as: **SUSTAINED.**

3. That the charge of Violation of Operational Directive, PRF 1.3 *Rules of Conduct,* Category A: Duty to Obey, Rule A3, *Compliance with Directives,* specifically General Order 6101, *Mandatory Use of Vehicle Restraint Devices* is classified as: **SUSTAINED.**

4. That twenty-four (24) points are assessed per the Department's *Crash/Accident Disciplinary Matrix.* Per the matrix, the recommendation is a CP-535 is issued.

5. That the investigation be **CLOSED.**

Following are prior Office of Professional Responsibility cases and/or active Command Discipline involving **Officer Lawrence Anyaso:**

| Case # | Charge | Disposition |
|---|---|---|
| 05-099 | Insubordination | Sustained |

**CONFIDENTIAL INFORMATION**

| | | |
|---|---|---|
| | Duty Post<br>Truthfulness | Sustained<br>Not Sustained |
| 09-127 | Compliance with Directives<br>CP-534 w/ 8 hours | Sustained<br>issued 03/02/10 |

Should you concur with the findings in this matter, I will notify Inspector Lawrence F. Loughery of the disposition of the case.

Respectfully,

Sergeant Shawn K. Huycke

SKH: skh: 3010